**Opinion issued January 9, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00089-CV

———————————

**THE PINKERTON LAW FIRM, PLLC, Appellant**

**V.**

**UNIVERSITY CANCER CENTER, INC., Appellee**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-58725**

---

## MEMORANDUM OPINION

The Pinkerton Law Firm, PLLC, challenges the denial of a motion to dismiss under the Texas Citizens Participation Act.[1] In the trial court, University

---

[1]  *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 TEX. GEN. LAWS 961, 961–64 (current version at TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011), *amended by* Act of May 24, 2013, 83rd Leg., R.S., ch. 1042, §§ 1–3, 5, 2013 TEX.

Cancer Center, Inc. sued Pinkerton for breach of contract and in *quantum meruit*, seeking recovery for breach of contract and in *quantum meruit* for health-care services it provided for Pinkerton and the clients Pinkerton represented in tort actions alleging benzene exposure.

On appeal, Pinkerton contends that the trial court erred in denying its TCPA motion. We affirm.

## Background

During the Spring of 2010, the BP Products North America, Inc. refinery in Texas City had a benzene release. Some of the more than 50,000 people who live near the refinery claimed that they were exposed to benzene as a result. Hundreds of them retained Pinkerton to bring personal-injury lawsuits against BP. The plaintiffs alleged that the benzene exposure caused them to experience "dizziness, diarrhea, nausea, vomiting, rashes, itchy eyes, stomach ache, difficulty breathing, and fatigue, [and] other symptoms."

Pinkerton sought medical testing and screening services to support its clients' personal-injury claims. It orally agreed to give the Center a $40 deposit

GEN. LAWS 2499, 2499–500. The Legislature has since passed, and the Governor has approved, amendments to the TCPA. *See* Act of May 20, 2019, 86th Leg., R.S., H.B. 2730, §§ 1–9. This suit was filed before September 1, 2019, when the amendments took effect; thus, the pre-amendment version of the law controls. *See id.* §§ 11–12. Included among the amendments are the deletion of "relates to" from the provision outlining what legal actions the statute applies to, changing the definition of "matter of public concern," and adding several new exemptions to the statute's application. *See id.* §§ 1, 2, 9.

and a letter of protection for each client it referred there. In return, the Center agreed to provide each client's medical records to Pinkerton. Pinkerton directed its clients to receive "health-care services" at the Center, including "medical testing, screening, and treatment necessary to reasonably investigate the potential negative health impacts" alleged in the BP suits. From August 25 to October 5, 2010, the Center saw and examined the Pinkerton clients and forwarded the testing and screening results to Pinkerton.

On November 10, 2010, Pinkerton provided the Center with a letter of protection intended to apply to all Pinkerton clients whom the Center had seen. The letter, signed by the firm's owner, provides:

> This will confirm that I represent all the clients listed on Attachment "A" and they are in a pending litigation. Accordingly, The Pinkerton Law Firm, PLLC, hereby authorizes your facility to provide health care services for all of my clients listed on Attachment "A." Upon resolution of this litigation, either by positive settlement or upon payment of jury verdict, your facility will receive payment for services rendered.
>
> All payable services under this letter of protection must be reasonable and necessary and all charges must be reasonable in amount and consistent with the usual charges in this area. This is a contract governed by the laws of the State of Texas.
>
> I look forward to a long relationship with your facility. Please advise if you have any questions. As always, I remain,
>
> Very truly yours,
> [written signature]
> Chad Pinkerton

Sometime later, Pinkerton engaged in settlement negotiations with BP, which culminated in confidential settlement agreements on behalf of some of Pinkerton's clients. Pinkerton admitted to the Center that the BP litigation had concluded. In their communications about the settlement, Pinkerton emailed the Center "three worksheets . . . totaling 476 'active clients'" who had each received some amount in settlement of their claims, but Pinkerton refused to disclose the specific terms of the settlements to the Center without a court order.

Pinkerton paid some amount toward the $40 deposit per client but did not pay the Center in full for the services it provided. In an April 2013 deposition, the Center's owner stated that Pinkerton had not paid the entire amount it promised to pay under the parties' arrangement. In 2017, Pinkerton responded to the Center's demand for payment by informing the Center that it would not pay for services provided under the letter of protection. The Center brought this suit for breach of contract and in *quantum meruit* in August 2018.

## TCPA Motion To Dismiss

Pinkerton contends that the trial court erred in denying its TCPA motion because it satisfied its burden to prove that the TCPA applies to the Center's claims and that either the Center failed to make a prima facie showing on each element of its claims or Pinkerton proved by a preponderance of the evidence that its statute-of-limitations defense defeats them.

4

## I.    Applicable Law and Standard of Review

We review de novo a trial court's denial of a TCPA motion to dismiss, including the attendant question of whether the TCPA applies to the underlying suit. *See Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018); *Holcomb v. Waller Cty.*, 546 S.W.3d 833, 839 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 500 S.W.3d 26, 39 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). We liberally interpret the TCPA's provisions to fully effectuate its purpose, which "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE §§ 27.002, 27.011(b).

We look to the TCPA's language to determine whether a challenged claim comes within its scope. *Youngkin*, 546 S.W.3d at 680. We apply the plain meaning of the statutory language unless a contrary purpose is evident from the context or its application leads to absurd results. *Id.* To accomplish its purpose, the TCPA provides a summary procedure in which a party may move for dismissal because the claims made against it are based on, relate to, or are in response to the party's exercise of the right of free speech, right to petition, or right of association. *Id.*

§ 27.003(a); *see In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015). This summary procedure requires a trial court to dismiss suits, or particular claims within suits, that demonstrably implicate the statutorily protected rights, unless the nonmovant makes a prima facie showing that the its claims have merit. *Sullivan v. Abraham*, 488 S.W.3d 294, 295 (Tex. 2016); *see* TEX. CIV. PRAC. & REM. CODE § 27.005(b).

The TCPA defines the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). The communication need not be made to a particular individual or entity, such as a governmental body, to constitute protected conduct. *Schimmel v. McGregor*, 438 S.W.3d 847, 858 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

"'Matters of public concern' include issues related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7). Communications may relate to a matter of public concern even if they are non-public, do not specifically mention health, safety, environmental, or economic concerns, or bear only a tangential relationship to the

6

matter of public concern. *See ExxonMobil Pipeline v. Coleman*, 512 S.W.3d 895, 899–900 (Tex. 2017).

Pertinent to this case, the "exercise of the right to petition" means "(A) a communication in or pertaining to: (i) a judicial proceeding; [or] (B) a communication in connection with an issue under consideration or review by a . . . judicial . . . body . . . ." *Id.* § 27.001(4)(A)(i), (B).

Under the TCPA's commercial-speech exemption, the statutory dismissal procedure does not apply to a suit brought against a person who is "primarily engaged in the business of selling or leasing goods or services" if certain other criteria are satisfied. *See* TEX. CIV. PRAC. & REM. CODE § 27.010(b). A person opposing a TCPA motion who meets this definition also must show that:

- the person made the communication, or engaged in the conduct, on which the claim is based in its capacity as a seller or lessor of those goods and services;

- the communication, or conduct, at issue arose out of a commercial transaction involving the kind of goods or services that the person provides; and

- the intended audience of the communication or conduct were actual or potential customers of the person for the kind of goods or services that the person provides.

*See Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam); *Schimmel*, 438 S.W.3d at 857.

Courts consider the parties' pleadings in determining whether to dismiss an action under the TCPA. TEX. CIV. PRAC. & REM. CODE § 27.006(a). If the TCPA

7

movant satisfies its burden to show that the challenged claims are based on, relate to, or are in response to its exercise of the right to speak, petition, or association, the burden shifts to the nonmovant to either establish that the commercial-speech exemption makes the TCPA inapplicable or make a prima facie showing for each element of its claims. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b)–(c); *Youngkin*, 546 S.W.3d at 679.

## II. Analysis

Pinkerton's motion argues that the Center's claims are based on, relate to, or are in response to Pinkerton's exercise of its rights to free speech and to petition based on the following allegations in the Center's live petition:

- Pinkerton represented that its clients were experiencing various symptoms allegedly resulting from exposure to BP's benzene release.

- Pinkerton and the Center "reached an oral agreement that [Pinkerton] would refer its clients in the BP personal injury litigation to [the Center] for health care services and pay a $40 deposit for each client referred."

- Pinkerton "contract[ed]" with the Center "to provide health care services for its clients" to assist Pinkerton in investigating the health consequences of their exposure to the benzene released by BP.

- "Pinkerton referred 1,889 clients to the Center."

- Pinkerton personnel corresponded with the Center about signing and sending letters of protection to the Center.

- Pinkerton issued a letter of protection to the Center that asked the Center "to provide 'health care services' to Pinkerton's clients," because the services were necessary evidentiary support for their personal injury claims.

- Pinkerton "engaged in settlement negotiations with BP."

8

- "Pinkerton admit[ted] it achieved a settlement with BP for 476 of the 952 [letter-of-protection] clients" and sent "three worksheets," showing that "the 476 clients received money."

- Pinkerton admitted that the BP litigation had concluded.

- After achieving the settlement, Pinkerton failed to pay the Center "for the necessary and reasonable value of its services as provided by the global [letter of protection]."

- Pinkerton "wrote to" the Center, "stating that [Pinkerton] would not pay for the health care services provided by the Center" under the letter of protection.

In each instance, Pinkerton communicated either with: (1) the Center, allegedly to create, enter into, and breach their agreements, or to define the Center's relationship to Pinkerton's management of its clients' suits against BP; (2) BP, to negotiate and settle the suits; or (3) the trial court hearing the BP suits, in connection with its clients' representation. These communications either pertain to Pinkerton's clients' judicial proceedings against BP or to the public health and safety concerns arising from the benzene release. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(1), (3), (4)(A)(i), (4)(B), (7)(A)–(B); *Youngkin*, 546 S.W.3d at 680–81 (TCPA applied to claims related to Rule 11 agreement announced in open court); *Coleman*, 512 S.W.3d at 900 (reasoning that communications may relate to public concern even if they bear only a "tangential relationship" to matter of public concern); *Dickens v. Jason C. Webster, P.C.*, No. 05-17-00423-CV, 2018 WL 6839568, at *3–5 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (mem. op.) (TCPA applied to claim about alleged fee-sharing agreement between attorneys);

9

*Porter-Garcia*, 564 S.W.3d at 80–81, 85–86 (holding that TCPA applied to claims arising out of Texas Workforce Commission proceeding that had already resulted in final ruling). The allegations in the Center's live petition reveal that its claims are based on, related to, or in response to Pinkerton's TCPA-protected rights. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a); *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) ("When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more.").

The Center argues that the commercial-speech exemption prevents application of the TCPA to its claims. Because the trial court's order denying Pinkerton's TCPA motion does not state the specific grounds on which it relied, the commercial-speech exemption could support the order. *See Santellana v. CentiMark Corp.*, No. 01-18-00632-CV, 2019 WL 1442228, at *3 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.) (mem. op.). The TCPA's commercial-speech exemption declares that the TCPA does not apply

> to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

TEX. CIV. PRAC. & REM. CODE § 27.010(b). This "exemption applies only to certain communications related to a good, product, or service in the marketplace—communications made not as a protected exercise of free speech by an individual,

10

but as commercial speech which does no more than propose a commercial transaction." *Castleman*, 546 S.W.3d at 690 (internal quotation and emphasis omitted).

Pinkerton points out that the communications described in the Center's petition were all made by Pinkerton to the Center, a court, or opposing counsel, and thus argues that the Center has not shown that "the intended audience of the communication or conduct were actual or potential customers of the defendant for the kind of goods or services that the defendant provides." *Id.* at 688. Pinkerton argues that because it did not sell legal services to the Center, opposing counsel, or the trial courts, the commercial-speech exemption cannot apply to the Center's claims.

This argument, however, disregards the fact that the business of selling legal services and the business of buying or selling other goods or services are not mutually exclusive activities. *See N. Cypress Med. Ctr. Operating Co. v. Norvil*, 580 S.W.3d 280, 286 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (quoting *Tyler v. Pridgeon*, 570 S.W.3d 392, 398 (Tex. App.—Tyler 2019, no pet.)). Law firms, as a matter of course, retain experts and other professionals from a variety of sources and disciplines to assist them in developing their clients' cases. Here, Pinkerton is alleged to have agreed to pay the Center to screen Pinkerton's clients and provide Pinkerton with the screening results. Nothing indicates that anyone

other than Pinkerton had agreed to compensate the Center for those services, and all communications relevant to the transaction occurred between Pinkerton and the Center. With respect to the communications on which the claims are based, the Center was the intended audience or recipient. As a result, the Center satisfied its burden to show that the commercial-speech exemption applies here.

## Conclusion

We affirm the trial court's order denying Pinkerton's TCPA motion to dismiss.


Gordon Goodman
Justice

Panel consists of Justices Lloyd, Goodman, and Landau.