ACCEPTED
01-14-00906-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/20/2015 9:24:36 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00906-CV

In The
First Court of Appeals
Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
5/20/2015 9:24:36 PM
CHRISTOPHER A. PRINE
Clerk

**JOHN MOORE SERVICES, INC. AND
JOHN MOORE RENOVATION, LLC,**

*Appellants,*

**v.**

**THE BETTER BUSINESS BUREAU OF
METROPOLITAN HOUSTON, INC.,**

*Appellee.*

## BRIEF OF APPELLEE

Lauren B. Harris
Texas Bar No. 02009470
Lharris@porterhedges.com
Jeffrey R. Elkin
Texas Bar No. 06522180
Susan K. Hellinger
Texas Bar No. 00787855
M. Harris Stamey
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6624
Facsimile: (713) 226-6224

*Attorneys for Appellee The Better
Business Bureau of Metropolitan,
Houston, Inc.*

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), the following is a list of all parties and the names and addresses of all counsel:

**I.    APPELLANTS:**

John Moore Services, Inc. and John Moore Renovation, LLC

**II.   COUNSEL FOR APPELLANTS:**

Douglas Pritchett
JOHNSON, TRENT, WEST & TAYLOR LLP
919 Milam, Suite 1700
Houston, Texas 77002
Telephone: (713) 222-2323
Facsimile: (713) 222-2226

Lori Hood
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
1301 McKinney St., Suite 3700
Houston, Texas 77010
Telephone: (713) 650-9700
Facsimile: (713) 650-9701

**III.  APPELLEE:**

The Better Business Bureau of Metropolitan Houston, Inc.

**IV.   COUNSEL FOR APPELLEE:**

Lauren B. Harris
Jeffrey R. Elkin
Susan K. Hellinger
M. Harris Stamey
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6624
Facsimile: (713) 226-6224

# TABLE OF CONTENTS

**Page No.**

Identity of Parties and Counsel ....................................................................... ii

Table of Contents ......................................................................................... iii

Table of Authorities .................................................................................... vi

Statement of the Case ...................................................................................x

Issues Presented ......................................................................................... xi

Introduction ...................................................................................................1

Statement of Facts .........................................................................................2

    A.     The Bureau Successfully Defends John Moore's
          Anti-SLAPP Lawsuit......................................................................2

    B.     John Moore Fails In Its Attempt To Amend Its Pleadings
          After This Court's Decision That Dismissal Was Warranted...............4

    C.     A Jury Awards The Bureau Its Attorneys' Fees Pursuant to
          the TCPA .....................................................................................6

    D.     John Moore Fails In Its Post-Trial Attempt To Consolidate
          This Case With Its Second Pending Lawsuit Against the Bureau ........7

Summary of Argument....................................................................................8

Standard of Review ........................................................................................9

Argument......................................................................................................10

I.     The Jury's Award of Attorneys' Fees To The Bureau Is Supported By
       Legally Sufficient Evidence...................................................................10

    A.     The Jury's Award Is Within The Range of The Evidence
          Presented.....................................................................................11

    B.     The Bureau's Documentary Evidence Supports The Jury's
          Verdict .......................................................................................18

1.      The Redaction of Privileged Information From Client Invoices To Protect Confidentiality Is Entirely Appropriate....19

        a.      John Moore's Failure To Object To Any Redaction of Information Waived That Claim ................................19

        b.      Texas Law Recognizes That Redacted Fee Statements Can Support A Fee Award ..........................20

2.      The "Block Billing" In The Bureau's Invoices Does Not Preclude Any Recovery of Attorneys' Fees..............................23

C.      The Bureau's Expert's Testimony Is Legally Sufficient Evidence to Support the Fee Award....................................................27

D.      Alternatively, The Case Should Be Remanded To Allow The Court To Determine The Appropriate Fee Award ..............................29

II.     The Trial Court Properly Denied John Moore's Untimely Attempts To Amend Its Pleadings and To Consolidate This Case With Its Second Lawsuit....................................................................31

A.      The Trial Court Properly Denied John Moore's Untimely Request For A Pleading Amendment....................................31

B.      The Trial Court Acted Within Its Sound Discretion In Declining To Consolidate This Case With The New Lawsuit............36

1.      John Moore Waived Its Challenge To The Alleged Failure To Consolidate This Case With Its Second Lawsuit ........................................................36

2.      John Moore's Post-Verdict Consolidation Request Was Untimely and An Attempt to Avoid The Earlier Denial of Pleading Amendments ........................................38

Conclusion and Prayer ....................................................................40

Certificate of Service....................................................................42

Certificate of Compliance .............................................................43

Appendix:

Tab A:   TEX. CIV. PRAC & REM. CODE ANN. §51.014

Tab B:   Act of May 24, 2013, 83d Leg., R.S., H.B. 2935, § 6

Tab C:   Timeline of Procedural Events

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allison v. Ark. La. Gas Co.,*
624 S.W.2d 566 (Tex. 1981) .......................................................................10

*Arthur Andersen & Co. v. Perry Equip. Corp.,*
945 S.W.2d 812 (Tex. 1997) ................................................................ 14, 15

*Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.,*
441 S.W.3d 345 (Tex. App.—Houston [1st Dist.] 2013, pet.
denied)....................................................................................... x, 1, 3, 4, 33

*Breitling Oil & Gas Corp. v. Petroleum Newspapers of Ak., LLC,*
No. 05-14-00299-CV, 2015 WL 1519667 (Tex. App.—Dallas
Apr. 1, 2015, no pet. h.) ..............................................................................30

*Burroughs Wellcome Co. v. Crye,*
907 S.W.2d 497 (Tex. 1995) .......................................................................26

*Cherry v. McCall,*
138 S.W.3d 35 (Tex. App.—San Antonio 2004, pet. denied)................ 27, 28

*Chevron Chem. Co. v. Southland Contracting, Inc.,*
No. 05-96-00560-CV, 1998 WL 640987 (Tex. App.—
Dallas 1998, pet. denied) (not designated for publication) ..........................11

*Circle Y of Yoakum v. Blevins,*
826 S.W.2d 753 (Tex. App.—Texarkana 1992, writ denied) .......................17

*City of Austin v. Whittington,*
384 S.W.3d 766 (Tex. 2012) .......................................................................34

*City of Laredo v. Montano,*
414 S.W.3d 731 (Tex. 2013) ................................................................ 25, 28

*City of Keller v. Wilson,*
168 S.W.3d 802 (Tex. 2005) .......................................................................10

*Clark v. Trailways, Inc.,*
774 S.W.2d 644 (Tex. 1989) .......................................................................20

# Table of Authorities (continued)

*Douglas v. Am. Title Co.,*
    196 S.W.3d 876 (Tex. App.—Houston [1st Dist.] 2006, no pet.)...................2

*El Apple I, Ltd. v. Olivas,*
    370 S.W.3d 757 (Tex. 2012) ........................................... 23, 24, 25

*Estate of Johnson,*
    No. 11-00467-CV, 2012 WL 1940656 (Tex. App.—San Antonio
    May 30, 2012, no pet.)....................................................22

*Garcia v. Gomez,*
    319 S.W.3d 638 (Tex. 2010) ..............................................28

*Gaughan v. Nat'l Cutting Horse Ass'n,*
    351 S.W.3d 408 (Tex. App.—Fort Worth 2011, pet. denied)......................22

*Gulf States Utils. Co. v. Low,*
    79 S.W.3d 561 (Tex. 2002) ...............................................11

*Hardin v. Hardin,*
    597 S.W.2d 347 (Tex. 1980) ..............................................10

*Helena Chem. Co. v. Wilkins,*
    47 S.W.3d 486 (Tex. 2001) ...............................................11

*Hines v. Parks,*
    128 Tex. 289 S.W.2d 970 (1936)...........................................19

*Hunter v. Andrews,*
    570 S.W.2d 590 (Tex. Civ. App.—Waco 1978, no writ).............................39

*In re Ethyl Corp.,*
    975 S.W.2d 606 (Tex. 1998) ..............................................39

*James v. Calkins,*
    446 S.W.3d 135 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) ...... 33, 35

*Jarvis v. Rocanville Corp.,*
    298 S.W.3d 305 (Tex. App.—Dallas 2009, pet. denied)....................... 20, 21

*John Moore Servs., Inc. v. Better Bus. Bureau of Metro. Hous., Inc.,*
    No. 13-0658 (Tex. Feb. 14, 2014) ..............................................6

*Kinney v. BCG Attorney Search, Inc.,*
    No. 03-12-00579-CV, 2014 WL 1432012 (Tex. App.—Austin
    Apr. 11, 2014, no. pet.) (mem. op., not designated for publication) .............34

*Lemons v. EMW Mfg. Co.,*
    747 S.W.2d 372 (Tex. 1998) (per curiam) ....................................................38

*Lone Star Ford, Inc. v. McCormick,*
    838 S.W.2d 734 (Tex. App.—Houston [1st Dist.] 1992, writ denied)..........10

*Long v. Griffin,*
    442 S.W.3d 253 (Tex. 2014) ........................................................ 23, 24, 25

*Mayberry v. Texas Dep't of Agric.,*
    948 S.W.2d 312 (Tex. App.—Austin 1997, writ denied).............................11

*Mitchell v. Fort Davis State Bank,*
    243 S.W.3d 117 (Tex. App.—El Paso 2007, no pet.) ..................................11

*Perez v. Embree Constr. Group, Inc.,*
    228 S.W.3d 875 (Tex. App.—Austin 2007, pet. denied) .............................35

*Ramsey v. Lynch,*
    No. 10-12-00198-CV, 2013 WL 1846886 (Tex. App.—Waco
    May 2, 2013, no pet. h.)...............................................................................30

*Rehak Creative Servs., Inc. v. Witt,*
    404 S.W.3d 716 (Tex. App.—Houston [14th Dist.] 2013, pet. denied)........30

*Schaefer v. Tex. Employers' Ins. Ass'n,*
    612 S.W.2d 199 (Tex. 1980) ........................................................................27

*Schimmel v. McGregor,*
    438 S.W.3d 847 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ..........36

*Sentinel Integrity Solutions, Inc. v. Mistras Grp., Inc.,*
    414 S.W.3d 911 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ..........22

*Shipp v. Malouf,*
    439 S.W.3d 432 (Tex. App.—Dallas 2014, pet. denied)................................6

*South W. Prop. Trust, Inc. v. Dallas Cty Flood Control Dist.,*
    136 S.W.3d 1 (Tex. App.—Dallas 2002, no pet.) ........................................39

# <u>Table of Authorities (continued)</u>

*Sterner v. Marathon Oil Co.*,
 767 S.W.2d 686 (Tex. 1989) ........................................................................9

*Subaru of Am., Inc. v. David McDavid Nissan, Inc.*,
 84 S.W.3d 212 (Tex. 2002) .........................................................................34

*Watler v. Watler,*
 No. 01-01-01038-CV, 2003 WL 1091765 (Tex. App.—Houston
 [1st Dist.] Mar. 13, 2003, no pet.) (mem. op., not designated for
 publication) ..............................................................................................22

*Woodhaven Partners, Ltd. v. Shamoun & Norman, LLP,*
 422 S.W.3d 821 (Tex. App.—Dallas 2014, no pet.) ....................................20

## RULES AND STATUTES

TEX. CIV. PRAC. & REM. CODE ANN. § 27.001 *et seq.*..................................................x

TEX. CIV. PRAC. & REM. CODE ANN. §27.009(a)(1)............................................8, 30

TEX. CIV. PRAC. & REM. CODE ANN. §51.014 ........................................... 32, 33, 34

TEX. CIV. PRAC. & REM. CODE ANN. §51.014(b)..................................................5, 33

TEX. R. APP. P. 33.1................................................................................................20

TEX. R. CIV. P. 21 ..................................................................................................37

TEX. R. CIV. P. 269(e)............................................................................................17

TEX. R. CIV. P. 301 ................................................................................................19

TEX. R. EVID. 103(a)(1)..........................................................................................20

TEX. R. EVID. 703 ..................................................................................................29

TEX. R. EVID. 705 ..................................................................................................29

# STATEMENT OF THE CASE

**Nature of the Case:** Plaintiffs John Moore Services, Inc. and John Moore Renovation, LLC ("John Moore") filed suit against The Better Business Bureau of Metropolitan Houston, Inc. ("the Bureau") based on the Bureau's publication of an online review of John Moore. FirstSupp.CR5-23. The Bureau filed a motion pursuant to the Texas Citizens Participation Act ("TCPA") to dismiss the lawsuit, and the trial court denied the motion. SecondSupp.CR4-58; TEX. CIV. PRAC. & REM. CODE ANN. §27.001 *et seq.* (Vernon 2012). Following an interlocutory appeal, this Court reversed the trial court's order, and remanded the case to the trial court for further proceedings. *See Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). The Bureau then moved for the recovery of attorneys' fees, costs, and sanctions against John Moore. FirstSupp.CR149-352. John Moore objected to the motion, and sought a jury trial on the issue of attorneys' fees. First Supp.CR359-412.

**Trial Court:** The Honorable Dan Hinde, 269th Judicial District Court of Harris County, Texas, Cause No. 2012-35162.

**Trial Court Disposition:** The trial court denied the Bureau's motion for attorneys' fees, and set the issue for trial. First Supp.CR450. The issue of attorneys' fees was tried to a jury that awarded the Bureau $250,001.44 in defense costs incurred in the trial court and for the interlocutory appeal. CR108-115. The trial court signed a final judgment in favor of the Bureau dismissing the case, and awarding it a total of $250,001.44 in attorneys' fees and $6,000 as sanctions against John Moore under the TCPA. CR115-19.

**Parties in the Court of Appeals:** **Appellants:** John Moore Services, Inc. and John Moore Renovation, LLC

**Appellee:** The Better Business Bureau of Metropolitan Houston, Inc.

## ISSUES PRESENTED

1.  Whether the testimony of the Bureau's expert witness and contemporaneous monthly billing records offered at trial constitute legally sufficient evidence to support the jury's award of attorneys' fees to the Bureau? (*Response to Appellants' First Issue*)

2.  Whether the trial court properly exercised its discretion in declining:

    a.  to permit John Moore to assert new claims and add new parties after this Court decided in the Bureau's interlocutory appeal that the case warranted dismissal under the TCPA, and after the pleading amendment and party joinder deadlines had long expired?

    b.  to consolidate this case with John Moore's newly filed second lawsuit when it did not file its motion to consolidate until after the jury trial on attorneys' fees, and never properly presented its motion to the trial court for a ruling, thereby waiving the complaint? (*Response to Appellants' Second Issue*)

# INTRODUCTION

The Texas Citizens Participation Act ("TCPA") was enacted to deter litigation aimed at squelching the exercise of free speech and brought for purposes of harassment. Undeterred by this statute, John Moore has strived to defy the legislative mandate. Through multiple lawsuits in state court, John Moore has sought nothing more than to keep its claims alive and avoid this Court's prior determination that this litigation is governed by the TCPA and should be dismissed.[1] *See John Moore Servs.,* 441 S.W.3d at 345. In this appeal, John Moore challenges the denial of its attempts to assert new claims and join new parties following this Court's ruling, and the legal sufficiency of the jury's award of attorneys' fees against it despite the wealth of support for the verdict in the record. The trial court's judgment against John Moore should be affirmed.

---

[1] Q: (By the Court): "Ultimately, whether we have an Anti-SLAPP statute or not, you know, courts really frown on satellite litigation. Isn't this case just an end-run around the trial court's ruling that the pleadings, could not be amended and isn't this just an effort through a new lawsuit to amend pleadings that the trial court said could not be amended?"

A: (By John Moore's counsel): "Um, (pause) I guess the short answer is, is 'yes,'. . ."

*See* Oral argument transcript from March 31, 2015 argument in the related appeal, Cause no. 01-14-687-CV.

1

## STATEMENT OF FACTS

### A. *The Bureau Successfully Defends John Moore's Anti-SLAPP Lawsuit.*

John Moore filed suit against the Bureau in June 2012. FirstSupp.CR5-23; 3RR143. Among other things, John Moore complained that while it once received A+ ratings, its rating was later changed to an unfavorable "F." FirstSupp.CR5-23. John Moore asserted claims against the Bureau for tortious interference with existing and prospective business relationships, fraud, business disparagement, defamation, and "equitable remedies," all based on, related to, or in response to the Bureau's review and rating. 3RR147; FirstSupp.CR 5-23.

The Bureau filed a motion to dismiss the lawsuit based on the TCPA. SecondSupp.CR4-58;[2] 3RR144. John Moore opposed the motion and immediately sought discovery from the Bureau. 3RR144. Its response to the motion to dismiss included 48 pages of briefing and 367 pages of exhibits. 3RR146. John Moore also sought a continuance of the hearing on the motion to dismiss and the opportunity to pursue further discovery. 3RR145. The trial court granted John

---

[2] Many of the pleadings relevant to this dispute are also included in the record in Cause no. 01-12-00990-CV, the interlocutory appeal previously pending in this Court related to the merits of the Bureau's motion to dismiss. *See e.g.* CR27-79 (the Bureau's motion to dismiss), CR127-545 (John Moore's response), and CR557-570 (the Bureau's reply). This Court may take judicial notice of its own records relating to the same parties and subject matter. *See Douglas v. Am. Title Co.*, 196 S.W.3d 876, 878 n.1 (Tex. App.— Houston [1st Dist.] 2006, no pet.).

Moore's request for additional discovery, and ordered the production of documentary evidence. FirstSupp.CR30; 3RR145. The Bureau filed a detailed reply to John Moore's response, refuting John Moore's arguments that there was evidence as to any of its claims. 3RR147.

The parties participated in a hearing on the Bureau's motion to dismiss in September 2012. 3RR148. The trial court ultimately denied the motion. Second Supp.CR85-86; 3RR148. The Bureau then filed an interlocutory appeal. Second Supp.CR89-90; 3RR149; *John Moore Servs.,* 441 S.W.3d at 345.

While the case was on appeal, John Moore served the Bureau with requests for production seeking approximately 75 categories of documents. 3RR149. The Bureau produced approximately 12,000 pages of documents in response to the requests. 3RR151. The Bureau asked John Moore to agree to a stay of discovery during the pendency of the interlocutory appeal, but John Moore declined. 3RR150. The court of appeals also denied the Bureau's requests for a discovery stay. 3RR150; 4RR104-05. Discovery continued from approximately February through May 2013. 3RR151; 4RR105.

In April 2013, John Moore sought to extend the pleading amendment deadline in the docket control order. SecondSupp.CR104-07. The Bureau agreed to the request, and the trial court extended the pleading amendment deadline to

July 26, 2013. FirstSupp.CR35-37. John Moore did not request a corresponding extension of the party joinder deadline.

Meanwhile, both sides filed extensive briefing in the court of appeals, and the case was submitted for oral argument. 3RR152; 4RR28-29. The parties attempted to mediate the case, but were unable to settle their dispute. 3RR153; 240. In July 2013, this Court reversed the district court's order and remanded the case, holding that the Bureau met its burden to prove that John Moore's legal action related to the exercise of its right of free speech and was governed by the TCPA. *John Moore Servs.,* 441 S.W.3d at 354; 3RR152. The Court further held that "John Moore has failed to sustain its burden to show, by clear and specific evidence, a prima facie case for each essential element of its claims, or that its claims fall within the commercial-speech exception." *John Moore Servs.,* 441 S.W.3d at 362.

**B.** *John Moore Fails In Its Attempt To Amend Its Pleadings After This Court's Decision That Dismissal Was Warranted.*

Attempting to keep its litigation against the Bureau alive, after this Court's decision, on September 27, 2013, John Moore filed an amended petition. CR4-40. The amended petition joined a number of officers and directors of the Bureau and others and asserted several additional claims, including violations of the Texas Free Enterprise and Antitrust Act ("Antitrust Act"), breach of contract, unjust enrichment, detrimental reliance, fraud in the inducement, and violations of the

4

Texas Deceptive Trade Practices Consumer Protection Act ("DTPA"). CR4-40; 3RR153. A few days after filing its amended pleading, on September 30, 2013, John Moore filed a petition for review with the Texas Supreme Court. 3RR154.

Then, John Moore sought another continuance of the deadlines in the docket control order. SecondSupp.CR116-120. It also sought leave to join new parties in the lawsuit. FirstSupp.CR44-49. The Bureau opposed the motions because the deadlines had passed, and this Court had rendered a decision on the merits of the appeal. FirstSupp.CR51-92; SecondSupp.CR122-163.

Although the trial court initially granted leave to file the amended petition and issued an amended docket control order, FirstSupp.CR94-97, the court withdrew that ruling when the Bureau moved for reconsideration. CR43-73. In June 2013, the Legislature had amended the Texas Civil Practice & Remedies Code to establish an automatic stay of any trial court proceedings during the pendency of an interlocutory appeal under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. §51.014(b); App. A–B. As a result, the trial court lacked the authority to allow any pleading amendment while John Moore's appeal continued.

On November 1, 2013, the trial court struck John Moore's amended petition. FirstSupp.CR143-144; 3RR155. The trial court also vacated its prior order granting a continuance and extending the deadlines in the docket control order, and vacated its new trial preparation and docket control orders. FirstSupp. CR143-44.

5

**C.**  *A Jury Awards The Bureau Its Attorneys' Fees Pursuant to the TCPA.*

The Supreme Court denied John Moore's petition for review on February 14, 2014.  3RR153-54.  *See John Moore Servs., Inc. v. Better Bus. Bureau of Metro. Hous., Inc.*, No. 13-0658 (Tex. Feb. 14, 2014).  Once the appellate court's mandate issued on April 4, 2014, the Bureau requested its attorneys' fees in the trial court.  FirstSupp.CR149-352; 3RR156.  Jeff Elkin, counsel for the Bureau, provided an affidavit supporting the fee request.  FirstSupp.CR201-313; 3RR157.  The affidavit discussed the work that Porter Hedges performed, and summarized the invoices.  *Id.*  Mr. Elkin also testified that the amount of fees, rates charged, and work performed was reasonable and necessary.  *Id.*  John Moore challenged the Bureau's request and sought a jury trial of the issue.  FirstSupp.CR359-412; 3RR158.  The trial court ultimately denied the Bureau's fee request, and set the case for trial.  FirstSupp.CR450.

In July 2014, the Bureau's claim for attorneys' fees was tried to a jury.  CR108-114.   At trial, the Bureau sought $375,000 in attorneys' fees, approximately $15,000 less than it incurred.  3RR167-68.  The Bureau decided to omit any request for paralegal fees or fees incurred based on the work of very young associates, and did not seek fees for the time it incurred in trying the attorneys' fees dispute or in seeking the recovery of its fees.  3RR161-62.

The jury awarded the Bureau $106,369.28 for the attorneys' fees it incurred in the trial court before and during the interlocutory appeal; $81,360.80 for representation in the court of appeals; $37,982.08 for fees it incurred in the supreme court at the petition for review stage, and $24,289.28 for its lawyers' work performed after the appeal was decided. CR111-112. The jury declined to award fees for any future attorneys' fees incurred for this appeal. CR112.

**D.**  ***John Moore Fails In Its Post-Trial Attempt To Consolidate This Case With Its Second Pending Lawsuit Against The Bureau.***

After John Moore's failed attempt to amend its pleadings, it simply filed another lawsuit in state court. FirstSupp.CR693. The new lawsuit included the same allegations and named the same new parties as the amended petition filed earlier in this lawsuit. FirstSupp.CR552-81.

The Bureau moved for entry of final judgment in this case in accordance with the jury's verdict. FirstSupp.CR.458-487. The Bureau set its motion for hearing on August 8, 2014. FirstSupp.CR488-89. Then, the day before the hearing (and approximately two weeks after the attorneys' fees trial), John Moore filed a motion to consolidate this case with its second lawsuit. FirstSupp.CR490-684. However, it never set its motion for hearing.

The following day, at the hearing on the Bureau's motion for entry of judgment, the Bureau objected to the trial court's consideration of any issues relating to consolidation. 5RR21. The trial court sustained the objection, and

7

entered a final judgment. 5RR22; CR115-19. The trial court dismissed John Moore's claims with prejudice and awarded the Bureau attorneys' fees of $250,001.44 plus interest in accordance with the jury's verdict, and $6,000 in sanctions against John Moore. CR115-19. John Moore never sought or obtained any ruling on its consolidation request.

## SUMMARY OF ARGUMENT

The judgment awarding the Bureau its attorneys' fees should be affirmed. The Bureau succeeded on its motion to dismiss under the TCPA, and the statute entitles it to the recovery of its attorneys' fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. §27.009(a)(1). The jury's award of $250,000 in attorneys' fees is supported by the Bureau's expert witness's testimony and the monthly invoices describing the work done, amounts charged, and identifying the lawyer performing the work. DX3; 3RR167-68. The Bureau's expert testified as to the reasonableness and necessity of the Bureau's attorneys' fees, and the jury's $250,000 fee award was within the range of the evidence presented, and certainly less than the $375,000 in fees sought. *Id*.; 4RR54, 108. John Moore's assertions that the invoices the Bureau's expert relied upon were legally insufficient to support the verdict because they were redacted to protect client confidentiality or included "bulk billing" rather than task-billing has no support in Texas law.

8

Likewise, the trial court acted within its sound discretion in denying John Moore's requests to amend its pleadings to add new claims and parties, and to consolidate this case with its second lawsuit. John Moore missed the docket control order deadlines, and never sought to amend its pleadings until after this Court's decision that the case should be dismissed—over a year after suit was filed. CR4-40; FirstSupp.CR33, 35-37. Even after the mandate issued and an automatic statutory stay was no longer in effect, John Moore did not make any request for leave to amend. Further, the trial court correctly declined to consolidate this case with the second one where John Moore never properly set its request for hearing, and the motion was not filed until after the trial and the day before judgment. FirstSupp.CR490-684; *See* App. C (Timeline). John Moore's attempts to circumvent the TCPA through serial litigation should not be condoned.

## STANDARD OF REVIEW

If an appellant is attacking the legal sufficiency of the evidence to support an adverse finding on an issue on which he did not have the burden of proof at trial, he must demonstrate that "no evidence" supports the finding. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). In Issue One, John Moore challenges the legal sufficiency of the jury's findings awarding attorneys' fees to the Bureau. A "no evidence" point should be sustained only when the record reveals: (1) a complete absence of a vital fact; (2) the court is barred by rules of

9

law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810-28 (Tex. 2005).

In Issue Two, John Moore challenges the trial court's decisions to preclude further pleading amendments to allow it to assert new causes of action and join new parties, and allow this case to be consolidated with its second lawsuit. Appellate courts review the trial court's rulings on pleading amendments under an abuse of discretion standard. *See Hardin v. Hardin*, 597 S.W.2d 347, 349-50 (Tex. 1980). Similarly, appellate courts review trial courts' decisions regarding consolidation under an abuse of discretion standard. *See Allison v. Ark. La. Gas Co.*, 624 S.W.2d 566, 568 (Tex. 1981); *Lone Star Ford, Inc. v. McCormick*, 838 S.W.2d 734, 737 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

## **ARGUMENT**

### I. The Jury's Award of Attorneys' Fees to the Bureau Is Supported by Legally Sufficient Evidence.

Attempting to undermine the Bureau's proof at the outset, John Moore mischaracterizes testimony in the record as a concession from the Bureau that "the jury could not determine whether the [Bureau's] attorneys' fees were reasonable without looking at the invoices." App. Br. 6-7. The record, however, belies that claim as the invoices were not the sole source of support for Bureau's claim for

attorneys' fees. Although the invoices provide information to determine "exactly what work was done to incur those fees," the jury was also entitled to rely on the testimony of the Bureau's expert witness, Jeff Elkin, as to the necessity and reasonableness of those fees. 3RR156-67. Through expert witness testimony and supporting documentary evidence, legally sufficient evidence supports the jury's fee award.

### A. The Jury's Award Is Within The Range of The Evidence Presented.

A jury has broad discretion to award damages within the range of evidence presented at trial. *See Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002); *see Mayberry v. Texas Dep't of Agric.*, 948 S.W.2d 312, 317 (Tex. App.—Austin 1997, writ denied). When the evidence supports a range of awards, an award of damages within that range will be upheld. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 506 (Tex. 2001); *Mitchell v. Fort Davis State Bank*, 243 S.W.3d 117, 127 (Tex. App.—El Paso 2007, no pet.) (finding attorneys' fee award to be within the range of the evidence offered); *Chevron Chem. Co. v. Southland Contracting, Inc.*, No. 05-96-00560-CV, 1998 WL 640987, at *5 (Tex. App.—Dallas Sept. 21, 1998, pet. denied) (not designated for publication) (same).

The Bureau provided substantial evidence of reasonable and necessary fees of $375,000. The invoices it offered in evidence detailed the work performed on the Bureau's behalf that resulted in a successful outcome. DX3. These invoices

11

were sent to the Bureau on a monthly basis for its review and payment. They not only describe the work performed, but identify the person performing the work, the date it was performed, the time spent, and the charge. DX3. Summaries of the invoices broken down by phase of the litigation (DX7, 3RR158); the chronological history of the case (DX9, 3RR160); the lawyers working on the case and hourly rates charged by lawyer (DX8, 3RR163); and the work performed on a monthly basis (DX6, 3RR160), were also admitted in evidence. 3RR5.

Jeff Elkin, the Bureau's attorney in the litigation, also testified as an expert on the Bureau's attorneys' fees. Mr. Elkin has been practicing for almost 30 years as a commercial litigation lawyer and has handled litigation for hundreds of clients. 3RR128-29, 166. He was previously employed with Baker Botts in Houston, but has been a partner at Porter Hedges since 1996. 3RR129. He has been recognized for his legal skills in *Chambers USA*. 3RR131. He served as the lead lawyer in this litigation, and has represented the Bureau for over twenty years. 3RR132.

Mr. Elkin opined that he was qualified to testify as an expert based on his years of experience as a commercial litigator, and through his position as billing partner on hundreds of matters. 3RR166. He has also reviewed periodicals and surveys and conversed with other lawyers about rates that are typically charged in the Houston and Dallas areas. 3RR166, 169-70. Therefore, he had the experience

12

to determine what work is necessary on a litigation matter, the time it should take, and the rate for the work that would be reasonable. 3RR166.

Mr. Elkin further testified that it was his opinion that the $375,000 in attorneys' fees the Bureau was seeking was reasonable. 3RR167-68. In forming his opinion, Mr. Elkin considered the type of lawsuit, the amount of work necessary to win the case, and the rates that are charged for lawyers with similar experience in the Houston area. 3RR167-68. Mr. Elkin, an equity partner, has an hourly rate of $525, which he testified to be reasonable and in the "middle of market" for a lawyer of his experience handling complex commercial litigation at a comparable firm. 3RR168-70.

Similarly, other lawyers working on the case were billed at hourly rates varying downward from Mr. Elkin's depending in part on their years in practice and legal experience. *See* DX8. For example, the Bureau used the services of an appellate specialist to handle the interlocutory appeal. 3RR170-72. The appellate lawyer drafted the majority of the legal briefing on appeal and participated in oral argument at a rate of approximately $470 per hour. 3RR171-72. Two senior associates working on the case charged rates of approximately $290-$325 per hour, depending on their years in practice. 3RR172-73; DX8. A second-year associate helping on a discrete matter related to the case was charged at a rate of $220 per

13

hour. 3RR173. Mr. Elkin testified that he believed these rates to be reasonable. 3RR172-73.

Mr. Elkin further testified that the work performed was necessary in order to win the case, and that the time spent was reasonable. 3RR173. He again based his opinion on his years of experience in business litigation, among other things. 3RR174. He testified that he spent a significant amount of time every month going over the draft invoices. 3RR174. Mr. Elkin also confirmed that he made adjustments to the billing if he believed that the time spent on certain tasks was too great. 3RR174. He was not aware of any duplicative time entries, or any billing for work performed on other files. 3RR176. In both February and April 2013, the Bureau was given a $15,000 discount on fees. 3RR164.

Mr. Elkin testified that in rendering his expert opinion he considered the factors for determining whether attorneys' fees are reasonable as set forth in the Texas Supreme Court case in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817-19 (Tex. 1997).[3] 3RR178. The first factor is the time and labor

---

[3] The factors include: (1) the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results

14

involved in the case. *Id.* at 818. Mr. Elkin determined that this case involved novel and difficult issues because the TCPA was a new statute. 3RR178. As a result, there was little case authority for the lawyers to rely on to interpret its provisions, many of which John Moore argued precluded its application in this case. 3RR179. The absence of controlling case authority required the Bureau's lawyers to perform significant additional research and analysis to navigate the statute.[4] 3RR179.

Mr. Elkin further opined that the rates that Porter Hedges charged were customary for Harris County and reasonable for the services the firm provided in matters similar to this one. 3RR180. Porter Hedges charged the Bureau on an hourly basis as opposed to a contingent fee. 3RR183. Further, the damages that John Moore was seeking against the Bureau were significant. 3RR180. Mr. Elkin believed that John Moore sought damages in the range of $10 to $20 million. 3RR180-81; 4RR30. If the Bureau lost the lawsuit, it could have gone bankrupt. 3RR181.

_____

obtained or uncertainty of collection before the legal services have been rendered. *Id.* at 818.

[4] Mr. Elkin agreed that he was not precluded from accepting other employment while working on this case, an issue relating to the second *Andersen* factor. 3RR180.

15

The Bureau's lawyers also achieved a great result for their client. 3RR181; 4RR30. The Bureau prevailed in the litigation, entitling it to its attorneys' fees by statute. 3RR181. Porter Hedges has also had a long-standing relationship with the Bureau, having served as its counsel for approximately 20 years.[5] 3RR182.

In forming his opinion, Mr. Elkin also considered the level of experience of the lawyers performing the work. 3RR183. He testified that the level of experience of the attorneys was appropriate for the tasks assigned. 3RR183. Based upon all of these considerations, it was his opinion that $375,000 was a reasonable fee for the services Porter Hedges provided to the Bureau over the course of two years. 3RR183-84.

John Moore's lawyer, Lori Hood, also testified as an expert with regard to the Bureau's attorneys' fees. Expressing her "dismay[] about [the firm's] rates," John Moore attempted to discredit the reasonableness of the Bureau's attorneys' fees by making unfounded personal attacks and accusing the Bureau's lawyers of unethical conduct. 4RR45. Among other things, Ms. Hood maligned the Bureau's lawyers for allegedly billing for "calling me, and I know they weren't," 4RR46, "hid[ing] time" by "bulk bill[ing]," 4RR55, "plagiarism" of work from Dallas

---

[5] John Moore's President, Don Valentine, approached Mr. Elkin in 2010 to represent John Moore in pending litigation. 3RR182. The firm was unable to accept the representation. 3RR183.

16

lawyers in similar litigation, 4RR25-26, 72, improperly failing to task-bill, 4RR54, 71, and a "consistent…pattern of overbilling" and "overcharging." 4RR156-59. She also went on to criticize the Bureau's lawyers for telling their client this was "complex litigation" in order to "have higher rates," 4RR89-90, disloyalty to their client by not providing it with significant fee discounts, 3RR191; 4RR22, 163, and failing to take shortcuts on research by relying only on an outdated version of *O'Connors Causes of Action.* 3RR205-08; 4RR50.

With no foundation at all, she also proclaimed that Porter Hedges engaged in lawyer "trick[ery]" where secretaries charge for reviewing mail because the invoices include "read and review" billing entries, 4RR58, and that its bills were not reduced because Porter Hedges lawyers would "get called in to management" for writing off time equating to more than 5% of the invoice. 4RR65. At closing argument, Ms. Hood went on to express her "embarrass[ment] that someone in [her] profession, which [she takes] very seriously, would bring invoices like this to you-all…."[6] 4RR169.

---

[6] Also, during closing argument, Ms. Hood asked the jury to do her a "small favor" and decline to "reward a firm for overbilling on attorneys' fees." 4RR170. Texas law is clear that "criticism, censure, or abuse of counsel are not permitted. Appeals to passion and prejudice are improper, as are calls to punish a litigant for the acts of counsel." *See Circle Y of Yoakum v. Blevins*, 826 S.W.2d 753, 758 (Tex. App.—Texarkana 1992, writ denied); TEX. R. CIV. P. 269(e). Anxious for an end to this serial litigation, the Bureau elected not to seek a new trial for this highly improper and incurable argument or challenge the jury's failure to award attorneys' fees for this appeal.

Ms. Hood also testified that in her opinion the Bureau's fees were unreasonable, and that John Moore had incurred fees in the amount of $165,000 in prosecuting the lawsuit. 4RR108. She further testified that in similar litigation in Dallas involving the Bureau, the defense lawyers had billed $190,000 defending the lawsuit. 4RR54, 111. However, she did not explain the similarities or difference in the two lawsuits. In closing argument, Ms. Hood stated that the range of fees the jury was to consider was "zero to $375,000," 4RR154, 166, but encouraged the jury to award no more than approximately $95,000 in answering the questions in the court's charge. 4RR168-69.

Despite John Moore's personal attacks and unsupported conclusions, the jury awarded the Bureau $250,001.44 in attorneys' fees. CR108-115. This amount is precisely within the range of the evidence—approximately $100,000 less than the Bureau requested and above the amount John Moore argued the Bureau was entitled to receive. The attorneys' fee award should be affirmed.

**B.** *The Bureau's Documentary Evidence Supports The Jury's Verdict.*

John Moore vigorously contends that the redaction of confidential information from the Bureau's invoices, and "block billing" somehow preclude any recovery of attorneys' fees. App. Br. 6-20. Not only can John Moore not point to a single case to support its claims, but its arguments are also contrary to Texas Supreme Court precedent. These arguments should be summarily rejected.

18

### 1. The Redaction of Privileged Information From Client Invoices To Protect Confidentiality Is Entirely Appropriate.

The invoices the Bureau offered at trial were redacted to protect privileged and confidential information. 3RR134; 4RR28; DX3. The monthly invoices the Bureau received, however, had no redacted information. 3RR134. Therefore, the Bureau was able to review the complete invoices and to verify that the work performed on its behalf was appropriate. 3RR134. The Bureau's lawyer and expert, Jeff Elkin, also reviewed and prepared the invoices, and was able to testify to their contents without divulging confidential data. John Moore's complaints as to any redactions are unfounded, and were also not preserved.

### a. John Moore's Failure To Object To Any Redaction of Information Waived That Claim.

Although John Moore stridently complains of the Bureau's "heavy redactions" of the invoices supporting the Bureau's fee claim, it neglects to mention that it never once objected to them. At no time did John Moore raise any complaint about the removal of the confidential information during trial when the evidence was offered. DX3; 3RR5 (admission of trial exhibits). Instead, it waited to raise the issue post-verdict in a motion to disregard jury findings which it did not set for hearing or submission. *See* FirstSupp.CR490-684; TEX. R. CIV. P. 301; *Hines v. Parks*, 128 Tex. 289, 96 S.W.2d 970, 973 (1936) (the trial court cannot grant a

19

motion to disregard jury findings absent notice). As a result, the trial court properly declined to consider it. FirstSupp.CR 490-684; 5RR10, 22.

The admission or exclusion of evidence is within the sound discretion of the trial court. It is not error for the court to have admitted the redacted invoices when John Moore did not object to their admission at the time the evidence was offered. *See Clark v. Trailways, Inc.*, 774 S.W.2d 644, 647 (Tex. 1989). John Moore's urging of the issue post-judgment in its motion for new trial was far too late, and the complaint was waived. CR120-229; *see* TEX. R. EVID. 103(a)(1); TEX. R. APP. P. 33.1; *also see Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 320 (Tex. App.—Dallas 2009, pet. denied) (plaintiff's argument that redacted fee statements prevented effective cross-examination waived when not presented in the trial court).

### b. Texas Law Recognizes That Redacted Fee Statements Can Support A Fee Award.

Even if John Moore had objected, the admission of the redacted invoices would remain proper. Texas courts have recognized that redacted billing statements are sufficient to support an attorneys' fee award as long as enough information remains to demonstrate performance of the work. *See Woodhaven Partners, Ltd. v. Shamoun & Norman, LLP*, 422 S.W.3d 821, 842-43 (Tex. App.—Dallas 2014, no pet.) ("although heavily redacted, [the invoices] contained line-by-line itemizations of the various charges together with brief descriptions of each charge....significant information was provided regarding the activities conducted

20

by appellee during the underlying litigation"). Sufficient detail was provided in the invoices admitted in evidence here, and only strategical matters, issues researched, and related confidential information was omitted. *See* DX3.

John Moore offers no authority to support its view that the admission of these fee statements was in error, nor does it attempt to explain why the redactions were improper. *See Jarvis*, 298 S.W.3d at 320. It fails to cite any case where an appellate court determined that the evidence of attorney's fees was insufficient because the contemporaneously prepared billing records were redacted.

The Bureau's lawyers provided detailed invoices to the Bureau on a monthly basis describing the lawyers' and paralegals' services. 3RR134; DX3; *also see* Dx6, Dx7, Dx9 (summaries). The invoices provide the date of the work, the name of the person performing the work, the specific work performed, and the time spent on the work. 3RR134. Different lawyers within the firm worked on the case, and their rates varied depending on years in practice and specialization. 3RR138. Mr. Elkin reviewed each invoice before it was forwarded to the Bureau for payment to verify that the Bureau was properly billed, that the work was necessary, and that the time spent on a particular task was reasonable. 3RR135. Occasionally, Mr. Elkin would adjust the invoice to lower the billing for tasks on which he felt too much time was spent. 3RR136.

21

Further, not only were the redacted invoices sufficient to allow the jury to assess the work performed, but the testimony of Mr. Elkin also supported the fee award. *See Estate of Johnson*, No. 04-11-00467-CV, 2012 WL 1940656, at *2-3 (Tex. App.—San Antonio May 30, 2012, no pet.) (mem. op., not designated for publication) ("significant information was provided to the court in the redacted billing statements, and when combined with the testimony of [the appellant's] attorneys, further information was not necessary…."); *Gaughan v. Nat'l Cutting Horse Ass'n*, 351 S.W.3d 408, 422-24 (Tex. App.—Fort Worth 2011, pet. denied) (affirming award of attorneys' fees that was supported by redacted fee statements, a summary of rates and fees charged, and the testimony of the appellee's attorney as to the reasonableness of the award); *Watler v. Watler*, No. 01-01-01038-CV, 2003 WL 1091765, at *4 (Tex. App.—Houston [1st Dist.] Mar. 13, 2003, no pet.) (mem. op., not designated for publication) (finding no abuse of discretion in court's award of attorneys' fees despite heavy redactions of invoices where attorney testified as to the reasonableness of the fees).

The jury was free to believe the testimony of Mr. Elkin that the fees requested and reflected in the invoices were reasonable and necessary, despite any redactions to the billing statements in evidence. *See Sentinel Integrity Solutions, Inc. v. Mistras Grp., Inc.*, 414 S.W.3d 911, 921-30 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (affirming attorneys' fee award supported by lawyers'

testimony and redacted billing records). John Moore's complaint as to the redaction of the invoices should be rejected.

### 2. The "Block Billing" In The Bureau's Invoices Does Not Preclude Any Recovery of Attorneys' Fees.

John Moore's vigorous complaints about the so-called "block" or "bulk" billing in Porter Hedges's invoices is also meritless. App. Br. 6-20. John Moore does not dispute that the invoices contained a concise description of the daily services provided per lawyer, the name of the lawyer performing the work, the time spent daily by lawyer on the collective tasks, and the amount billed to the Bureau. 3RR244. Instead, John Moore contends that *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763-65 (Tex. 2012), and *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014) (per curiam) somehow preclude "block-billing" in attorneys' fees invoices. However, neither of these cases stand for the proposition that "task-based billing" is a prerequisite to the recovery of attorneys' fees.

In *El Apple*, the Texas Supreme Court considered whether an award of attorneys' fees under the lodestar method could be affirmed when the only evidence supporting those fees were attorney affidavits merely providing estimates or generalities about the work performed and the time spent on the work. 370 S.W.3d at 763. The lawyers provided no documentary evidence or time records to support their testimony, nor did they indicate the time spent on "a particular task or *category of tasks*." *Id.* (emphasis added). The Court concluded that "[w]ithout at

23

least some indication of the time spent on various parts of the case," the court had no basis to conduct a review of the fee award. *Id.*

The Court recognized that attorneys can testify as to the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked. *Id.* at 762–63 (internal citation omitted). However, "contemporaneous billing records or other documentation recorded reasonably close to the time when the work is performed" should be maintained to support the testimony. *Id.* at 763. Nowhere does the Court mention itemizing each task or hold that "block billing" is impermissible.

Also, in *Long*, the only evidence of attorneys' fees before the Court was an affidavit supporting a fee application that stated in general terms the categories of tasks performed, hourly rate, and hours spent on the work for a total fee. *Long*, 442 S.W.3d at 253-55. The affidavit broadly described the work as including "extensive discovery, several pretrial hearings, [and] multiple summary judgment motions," among other general references. *Id.* at 255. However, no billing records were submitted in support of the affidavit, and "without any evidence of the time spent on specific tasks, the trial court had insufficient information to meaningfully review the fee request." *Id*. at 255. Like the *El Apple* case, nowhere does the *Long* Court hold that "block billing" is impermissible—in fact, there were no invoices or

"contemporaneous records" supporting the affidavit for the Court to even consider. *Id.* at 255.

The Texas Supreme Court has made it clear that time records or billing statements are not the only means to satisfy the lodestar method of proving attorneys' fees. In *City of Laredo v. Montano*, 414 S.W.3d 731, 735–37 (Tex. 2013), the Court again stated that a lodestar fee can also be established through a lawyer's testimony as long as there are records available for the attorney to refer to in providing his testimony. *See also El Apple*, 370 S.W.3d at 763 (noting attorneys can testify as to their recollection of billing records). In *Montano*, 414 S.W.3d at 735-37, the court reversed a fee award to a lawyer who admitted at trial that he did not keep time records or prepare invoices for his clients, and with that information unavailable, could only provide estimates of the hours he spent on the case. However, the Court affirmed a fee award to another lawyer who testified that she kept track of her time, and that she had billed and been paid $25,000 for her work through trial, despite the fact that she did not offer those records in evidence to support her testimony. *Id.* at 737.

The quality of the evidence proffered here goes well beyond that in *El Apple*, *Long*, and *Montano.* Here, the Bureau offered over 90 pages of contemporaneously prepared billing records that specifically list the daily tasks and amount of time performed by each attorney. DX3. John Moore's criticism of the

25

summaries the Bureau also offered in evidence ignores that the record includes the actual invoices as well. App. Br. 11-12; Dx6, Dx7, Dx8. In addition, the jury heard extensive testimony from the Bureau's expert, Mr. Elkin, further explaining the reasonableness and necessity of the fees incurred. These contemporaneous billing records—along with extensive testimony from the Bureau's lead counsel—provide an abundance of support for the jury's $250,001.44 fee award.

Mr. Elkin also testified that the firm's billing methods were standard for law firms billing on an hourly basis and an accepted practice. 3RR177. He defined "block billing" as defining the cumulative tasks each day for each individual lawyer and the "total amount of time" for all those tasks, rather than providing the time spent on each individual task separately. 3RR177, 196. He explained that there is nothing inherently improper about block billing, and that most of his clients are billed in that format. 3RR177-78. Consistent with *Montano*, 414 S.W.3d at 737, Mr. Elkin testified that the jury could also rely on his testimony as evidence that the attorneys' fees were reasonable. 3RR198 ("Because I can testify, Ms. Hood, as I did, that at the time this was prepared, I reviewed it and made sure that the time for that amount, those entries were reasonable….").

Moreover, despite John Moore's complaints as to these invoices, many of them provide the "task-based" descriptions that John Moore complains are lacking. DX3 (*see* July 2013 through April 2014 invoices). Porter Hedges's billing

26

software changed in May 2013, so that approximately half of the firm's invoices sent to the Bureau for almost a year provided specific information concerning time spent on individualized tasks after that date. 3RR243; 4RR154. Because the information that John Moore complains is absent in fact exists in a significant number of these invoices, its arguments are baseless. DX3.

**C.** ***The Bureau's Expert's Testimony Is Legally Sufficient Evidence to Support the Fee Award.***

In an effort to excuse its failure to challenge the Bureau's expert testimony, John Moore asserts the meritless claim that Mr. Elkin's testimony was supported only by his *ipse dixit* and, therefore, is legally insufficient evidence. App. Br. 16-20. This case is, however, nothing like the cases John Moore cites as support. In those cases, the expert's testimony was either based on assumptions that were wholly unsupported by the facts or on assumptions that were actually incorrect. *See, e.g., Schaefer v. Tex. Employers' Ins. Ass'n*, 612 S.W.2d 199, 203-05 (Tex. 1980) (holding expert's opinion based on assumptions was no evidence that tuberculosis was caused by employment when expert did not know what type of tuberculosis plaintiff had and whether that type was present in the soil where he worked because the necessary testing had not been performed); *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995) (holding that expert testimony that product caused plaintiff to suffered frostbite was no evidence of causation when opinion was based on assumptions that were directly contradicted

27

by the record). Additionally, John Moore's cited cases do not involve redacted documentary evidence; they involve a *lack* of supporting evidence or *contradictory* evidence. *See id.* Moreover, none of John Moore's cases involves expert testimony on attorneys' fees, much less expert testimony by lead counsel in the case. *See Montano*, 414 S.W.3d at 735, 737 (rejecting claim that one attorney's testimony on fees was deficient when she did not list all the tasks she performed and did not produce billing records, but did testify about her areas of responsibility and did maintain billing records); *cf. Garcia v. Gomez*, 319 S.W.3d 638, 641 (Tex. 2010) (holding, in case where trial court awarded no fees, attorney's testimony that lacked specifics was some evidence of what a reasonable attorney's fee might be and noting that "[a]n attorney's testimony about the reasonableness of his or her own fees is not like other expert witness testimony. Although rooted in the attorney's experience and expertise, it also consists of the attorney's personal knowledge about the underlying work and its particular value to the client . . .").

In any event, Mr. Elkin's testimony was not conclusory. It was not based on critical but absent data. Nor was it based merely on his credentials. As discussed above, Mr. Elkin's testimony included a detailed explanation of the bases for his conclusions and was well supported by documentation, such as the invoices, and by his personal knowledge of the events in the case as lead counsel for the Bureau. Contrary to John Moore's claim, Mr. Elkin did not merely assume that the invoices

28

supported his conclusions like the expert in *Schaefer* who assumed the existence of facts although the relevant tests had not been performed. Mr. Elkin *knew* the invoices supported his conclusions. He had reviewed those very invoices—more than once. Additionally, those invoices, in redacted form, were in evidence. Even if the invoices or other support were inadmissible or simply not admitted into evidence, they could provide foundation for the expert testimony. *See* TEX. R. EVID. 703 (facts or data relied upon by expert "need not be admissible in evidence"); *see also* TEX. R. EVID. 705. Moreover, Mr. Elkin's testimony was not based on any inaccurate facts. Indeed, John Moore has not even claimed that a single basis for Mr. Elkin's testimony was incorrect. To the contrary, John Moore's expert, Ms. Hood, attempted to undermine Mr. Elkin's testimony merely by offering her own suppositions and personal attacks untethered to any facts in the record.

### D.     *Alternatively, The Case Should Be Remanded To Allow The Court To Determine The Appropriate Fee Award.*

The evidence is legally sufficient to support the jury's attorneys' fee award. Nonetheless, should this Court disagree, the case should be remanded to allow the trial court to decide the amount of attorneys' fees to be awarded to the Bureau. The TCPA was enacted in order to provide a mechanism for prompt dismissal of cases falling within its purview and to allow a prevailing party to recover its attorneys' fees. 2RR12 (The court: "[I]sn't the point of [chapter 27] to avoid trials

29

unless there has been found sufficient prima facie evidence of a claim?"). The statute does not contemplate that the plaintiff would be entitled to a jury trial on attorneys' fees rather than an expeditious dismissal. *See* TEX. CIV. PRAC. & REM. CODE ANN. §27.009(a)(1) ("If the court orders dismissal of a legal action under this chapter, the court shall award to the moving party court costs, reasonable attorney's fees, and other expenses…."). The Bureau's motion for fees supported by its expert affidavit was presented to the trial court, but over the Bureau's objections, the court denied the motion and set the attorneys' fee issue for trial. *See* FirstSupp.CR149-352, 415-29, 450; 2RR4-25; *cf. Breitling Oil & Gas Corp. v. Petroleum Newspapers of Ak., LLC,* No. 05-14-00299-CV, 2015 WL 1519667, at *5 n.2 (Tex. App.—Dallas Apr. 1, 2015, no. pet. h.) (mem. op., not designated for publication) (expressing no opinion on claim that the reasonableness of mandatory attorneys' fees under chapter 27 is a question for a jury because it was not preserved).

The award of attorneys' fees under the TCPA is a matter for the trial court, not a jury. *See, e.g.*, *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 723 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (noting that trial court awarded attorneys' fees to defendant following hearing on motion to dismiss); *Ramsey v. Lynch*, No. 10-12-00198-CV, 2013 WL 1846886, at *3 (Tex. App.— Waco May 2, 2013, no pet. h.) (affirming trial court's award of attorneys' fees

30

which was based upon evidence presented at hearing on motion to dismiss). The trial court's decision to put the attorneys' fee issue to a jury was improper, and if this Court decides the judgment for attorneys' fees is in error, the issue should be remanded to allow the trial judge to make a fee determination.

**II.    The Trial Court Properly Denied John Moore's Untimely Attempts To Amend Its Pleadings and To Consolidate This Case With Its Second Lawsuit.**

John Moore's claims that the trial court somehow abused its discretion in precluding further pleading amendments to allow it to raise new claims and to join additional parties, and by declining to consolidate this case with its new lawsuit, are meritless. App. Br. 20-25. John Moore had a year after filing this suit to amend its pleadings, but never attempted to do so until two months after this Court's decision that the case should be dismissed, and well after the expiration of the pleading amendment and joinder deadlines in the docket control order. Additionally, John Moore failed to properly preserve the consolidation issue by setting its consolidation request for hearing. Even so, the claim is unfounded based on John Moore's delay in filing the requisite motion until post-trial. The trial court properly rejected John Moore's belated attempts for a second bite at the apple.

### A.    *The Trial Court Properly Denied John Moore's Untimely Request For A Pleading Amendment.*

The trial court's decision to deny further pleading amendments was within its sound discretion. John Moore had ample opportunity to amend its pleadings in

31

the first case to timely plead the claims and name the parties it subsequently included in the second lawsuit.

This case was on file for over a year before John Moore attempted to amend its pleadings at any time. CR4-40. Even though the Bureau had filed the interlocutory appeal of the denial of its motion to dismiss, the trial proceedings were not initially stayed. *See id.* at §51.014(b). The case continued in the trial court while the appeal was pending, and John Moore opposed the Bureau's request for any stay of the case in the trial court. 3RR229. The parties engaged in considerable written discovery during the appeal. 3RR151; 4RR105.

The court's original docket control order set a party joinder deadline of five months after suit was filed, and a pleading amendment deadline nine months after suit was filed. FirstSupp.CR33. John Moore did not meet either deadline. However, the Bureau agreed to John Moore's request to extend certain of the docket control order deadlines nine months after John Moore filed suit. SecondSupp.CR104-07. The trial court granted the parties' agreed motion, and the pleading amendment deadline was extended. FirstSupp.CR35-36. Even so, John Moore did not amend its pleadings by the extended July 26, 2013 pleadings deadline. *Id.* Further, John Moore never sought to have the party joinder deadline extended as part of the agreed motion.

The Texas Legislature did not amend the TCPA to automatically stay proceedings in the trial court while an interlocutory appeal proceeded until a year after this suit was filed. *See id.* at §51.014(b); FirstSupp.CR5-23. The new statute was not enacted until just one month before this Court decided the appeal. *See John Moore Servs.,* 441 S.W.3d at 345. Therefore, John Moore had a full year to attempt to amend its petition or to seek leave to join new parties while the appeal proceeded. *Cf. James v. Calkins,* 446 S.W.3d 135, 145 n.4 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) (noting that the appellees amended their petition several times during the pendency of the interlocutory appeal pursuant to the TCPA). It did not do so, nor did it seek relief from the automatic stay to file its amended petition.

Counsel for John Moore even testified at trial as to John Moore's recognition that it was obligated to continue prosecuting its case and comply with court-ordered deadlines despite the interlocutory appeal:

> A: (By Ms. Hood): We had an order in place from the Court. It's called a "Docket Control Order." It's a one-page order, and it sets out the dates that we're supposed to have all these things done by.
>
> And so while it's on appeal, it's over here. It's going off on this branch. We still have this branch to deal with because the Court had ordered us to get certain things done at a certain time, and that includes written discovery, expert designations, pleadings, and all those things.

So we couldn't ignore the "Docket Control Order," otherwise, we would have–there's a potential we would have missed out on doing any discovery in the case, and then Mr. Valentine would have been very upset at me and probably would have fired me.

4RR104. Despite its recognition that these deadlines required compliance, John Moore elected to disregard them. It made no attempt to amend its pleadings until two months after the pleading deadline in the docket control order, more than two months after this Court's opinion was issued, and ten months after the joinder deadline. CR4-40. John Moore then waited even longer to seek leave of court to extend those deadlines once more. FirstSupp.CR44-49; SecondSupp.CR116-20.

By the time John Moore sought its pleading amendments, the statutory stay had been enacted, so the district court could not allow further pleading amendments until this Court's mandate issued on April 4, 2014.[7] FirstSupp.CR508-09. Even when the mandate issued, however, John Moore again did not hasten to amend its pleadings or join new parties. Instead, it did nothing to

---

[7] John Moore's claim that the stay provision "applied by its own terms only to appeals filed after its effective date" has no merit. App. Br. 23. Unless the Legislature provides otherwise, amendments to procedural rules such as Section 51.014 are applied to both pending and future cases. *See* TEX. CIV. PRAC. & REM. CODE § 51.014; *Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *3-4 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op., not designated for publication) (concluding 2013 amendment to Section 51.014 does not affect vested rights and is thus applicable to pending appeal of denial of motion to dismiss under Section 27.003); *see also City of Austin v. Whittington*, 384 S.W.3d 766, 790 (Tex. 2012) ("[P]rocedural and remedial laws that do not affect vested rights should be enforced as they exist at the time judgment is rendered."); *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222-23 (Tex. 2002).

raise the issue during the period when the court again had the authority to consider it. The judgment was entered four months later without John Moore urging its motion for leave to amend at all. CR115-19.

The trial court acted within its sound discretion in denying any further pleading amendments given the automatic stay and John Moore's lack of diligence. John Moore had ample opportunity to add new claims and join new parties, both before and after this Court's opinion. John Moore's delay in raising the issue justified the trial court's decision. *See e.g. Perez v. Embree Constr. Group, Inc.,* 228 S.W.3d 875, 883 (Tex. App.—Austin 2007, pet. denied) (trial court did not abuse its discretion in striking amended pleading filed well after pleading amendment deadline); *Cherry v. McCall*, 138 S.W.3d 35, 42-43 (Tex. App.—San Antonio 2004, pet. denied) (the trial court did not abuse its discretion in striking amended pleading filed post-trial).

Even if John Moore had requested a pleading amendment after the mandate issued, the trial court still would have been justified in denying the request. In other cases involving similar interlocutory appeals under the TCPA, appellate courts have recognized that the reversal of a denial of a motion to dismiss ends the litigation, aside from the collateral issues of fees, costs, and sanctions. *See e.g. James,* 446 S.W.3d at 150 (reversing denial of motion to dismiss and remanding for further proceedings related to attorneys' fees, costs, expenses, and sanctions

35

and to order dismissal of lawsuit); *Shipp v. Malouf*, 439 S.W.3d 432, 442 (Tex. App.—Dallas 2014, pet. denied) (reversing and rendering judgment of dismissal, and remanding for award of fees and sanctions); *Schimmel v. McGregor*, 438 S.W.3d 847, 863 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (reversing denial of motion to dismiss and remanding for further proceedings related to attorneys' fees, costs and expenses and to order dismissal of lawsuit). Allowing John Moore to circumvent this Court's resolution of this dispute by re-pleading after the appeal is contrary to the appellate courts' recognition in other cases that these decisions are to be accorded finality.

### B. The Trial Court Acted Within Its Sound Discretion In Declining To Consolidate This Case With The New Lawsuit.

John Moore cannot demonstrate that the trial court abused its discretion in declining to consolidate this case with its second lawsuit. Not only did John Moore fail to properly preserve that complaint, but it also has no merit. The trial court correctly declined to allow John Moore to effectively circumvent its prior ruling declining its request to add new claims and join new parties.

#### 1. John Moore Waived Its Challenge To The Alleged Failure To Consolidate This Case With Its Second Lawsuit.

John Moore failed to preserve its challenge to the trial court's alleged failure to consolidate this case with its second lawsuit. John Moore filed its second lawsuit in December 2013, approximately 1½ years after filing this action, and

36

after this Court decided that the trial court should have dismissed John Moore's claims. FirstSupp.CR552. When the mandate issued from this Court on April 4, 2014, John Moore did not quickly file its motion to consolidate its duplicative lawsuits. Instead, it cursorily raised the issue in a response to the Bureau's request for attorneys' fees, FirstSupp.CR374, yet conceded at the hearing on the Bureau's motion that the consolidation issue was not set for hearing. 2RR29-30. Instead, John Moore waited four months—*after* the trial on attorneys' fees and the filing of the Bureau's motion for the entry of a final judgment—to file its formal motion to consolidate. FirstSupp.CR458-88, 490-684.

And, even when John Moore finally filed its motion to consolidate, it again neglected to ensure that it was properly before the court. John Moore's motion to consolidate was filed the day before the hearing on the Bureau's motion for entry of final judgment. FirstSupp.CR490-684. John Moore filed an accompanying notice of oral hearing on the motion indicating it would be heard the following day. FirstSupp.CR686. However, the Bureau's counsel objected to the court's entertaining the motion to consolidate during the hearing on the motion for entry of judgment because it was never set on the court's docket and John Moore failed to provide the requisite notice. 5RR21; TEX. R. CIV. P. 21. John Moore's counsel even conceded at the hearing that it "[could] wait another day to talk about the

37

consolidation issue." 5RR8-9. The trial court sustained the Bureau's objections to the lack of notice on John Moore's motions. 5RR22.

The trial court then proceeded to enter final judgment. FirstSupp.CR688-92. Contrary to John Moore's assertions, the trial court did not "expressly consider and reject[] [John Moore's] consolidation arguments." App. Br. 21. The record is clear that the court declined to consider the consolidation motion because it was not properly set for hearing. Although the court indicated that John Moore was free to set its outstanding motions for hearing, it admonished John Moore that its motion to consolidate would be "[met] with some skepticism from the Court." 5RR27. Thereafter, John Moore did nothing to attempt to re-urge its motions or set them for hearing.

Because it failed to set its consolidation motions for hearing, John Moore did not preserve the complaint for appellate review. The issue was never properly presented to the trial court. *See Lemons v. EMW Mfg. Co.*, 747 S.W.2d 372, 373 (Tex. 1988) (per curiam). John Moore's complaint should be deemed waived.

> ### 2. *John Moore's Post-Verdict Consolidation Request Was Untimely and An Attempt to Avoid The Earlier Denial of Pleading Amendments.*

Even if the complaint over consolidation was preserved, however, it would still be meritless. John Moore's delay in moving for consolidation provides another basis for affirmance of the judgment. John Moore buried its first request in

a reply brief and never set it on the court's docket. FirstSupp.CR374. It then waited until well after this Court's ruling in the interlocutory appeal and the subsequent attorneys' fee trial to file a separate motion to consolidate. FirstSupp.CR490-684. Even if the trial court had considered that motion, it would have been justified in denying it because it was made post-trial. *See Hunter v. Andrews*, 570 S.W.2d 590, 593 (Tex. Civ. App.—Waco 1978, no writ) (finding no abuse of discretion in trial court's decision declining consolidation of newly filed case and action that was halfway through trial); *see also South W. Prop. Trust, Inc. v. Dallas Cty Flood Control Dist.*, 136 S.W.3d 1, 12 (Tex. App.—Dallas 2001, no pet.) (trial court's denial of motion to consolidate not an abuse of discretion in the absence of showing of any harm).

The denial of the motion to consolidate did not prejudice John Moore because the case had ended. Any consolidation after the first case was dismissed and the remaining issue of attorneys' fees was decided would only have been prejudicial to the Bureau. *See In re Ethyl Corp.*, 975 S.W.2d 606, 610 (Tex. 1998). If there has been any claim splitting or unnecessary "increased burden on the parties and the courts," it is only because John Moore has caused it through the filing of serial litigation. App. Br. 22, 24. John Moore concedes that the new lawsuit was filed to circumvent the trial court's denial of further pleading amendments. *See supra* p. 1 n.1.

Further, the trial court entered an order dismissing John Moore's second lawsuit only days later.[8] FirstSupp.CR693-94. Thus, consolidation would not have allowed John Moore to continue to pursue any of its legal theories. As a result, the lack of consolidation could not have harmed John Moore. Regardless, *this* case had been resolved, so it would not have been appropriate to consolidate the two cases. The trial court's decision to enter final judgment without consolidating this matter with the second case was correct. For all these reasons, the trial court's decision should be affirmed.

## CONCLUSION AND PRAYER

For all these reasons, Appellee The Better Business Bureau of Metropolitan Houston, Inc. respectfully requests that the trial court's judgment be affirmed. Alternatively, the case should be remanded for the trial judge to determine attorneys' fees, and for such other and further relief to which it may show itself to be justly entitled.

Dated: May 20, 2015.

---

[8] Because the trial court did not sign the order granting the motion to dismiss within the requisite statutory time period, the motion was deemed overruled by operation of law, and the Bureau filed an interlocutory appeal in the second case as well.

Respectfully submitted,

**PORTER HEDGES LLP**

By: ___/s/ Lauren Beck Harris_____

Lauren B. Harris
Texas Bar No. 02009470
lharris@porterhedges.com
Jeffrey R. Elkin
Texas Bar No. 06522180
Susan K. Hellinger
Texas Bar No. 00787855
M. Harris Stamey
Texas Bar No. 24060650
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6624
Facsimile: (713) 226-6224

*Attorneys for Appellee The Better
Business Bureau of Metropolitan,
Houston, Inc.*

41

## CERTIFICATE OF SERVICE

Pursuant to Rules 6.3 and 9.5(b), (d), and (e) of the Texas Rules of Appellate Procedure, this is to certify that on this 20th day of May 2015, a true and correct copy of the foregoing was served on the following counsel of record by U.S. first class mail and by electronic delivery as follows:

Douglas Pritchett, Jr.
Johnson Trent West & Taylor LLP
919 Milam Street, Suite 1700
Houston, Texas 77002

Lori Hood
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
1301 McKinney St., Suite 3700
Houston, Texas 77010

*Attorneys for Appellants John Moore Services, Inc. and John Moore Renovation, LLC*

/s/ Lauren B. Harris

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i)(2)(B) because this brief contains 9,084 words, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

This brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) and the type style requirements of Texas Rule of Appellate Procedure 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font or larger.

/s/ Lauren B. Harris
Lauren B. Harris

APPENDIX TAB A:   TEX. CIV. PRAC & REM. CODE ANN. §51.014

## § 51.014. Appeal from Interlocutory Order

(a) A person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that:

(1) appoints a receiver or trustee;

(2) overrules a motion to vacate an order that appoints a receiver or trustee;

(3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure;

(4) grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65;

(5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state;

(6) denies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73;

(7) grants or denies the special appearance of a defendant under Rule 120a, Texas Rules of Civil Procedure, except in a suit brought under the Family Code;

446

(8) grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001;

(9) denies all or part of the relief sought by a motion under Section 74. 351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351;

(10) grants relief sought by a motion under Section 74.351(*l*);

(11) denies a motion to dismiss filed under Section 90.007; or

*Text of subsec. (a)(12), as added by Acts 2013,*
*83rd Leg., ch. 44 (H.B. 200), § 1*

(12) denies a motion for summary judgment filed by an electric utility regarding liability in a suit subject to Section 75.0022.

*Text of subsec. (a)(12), as added by Acts 2013,*
*83rd Leg., ch. 1042 (H.B. 2935), § 4*

(12) denies a motion to dismiss filed under Section 27.003.

*Text of subsec. (b), as amended by Acts 2013,*
*83rd Leg., ch. 916 (H.B. 1366), § 1*

(b) An interlocutory appeal under Subsection (a), other than an appeal under Subsection (a)(4) or in a suit brought under the Family Code, stays the commencement of a trial in the trial court pending resolution of the appeal. An interlocutory appeal under Subsection (a)(3), (5), or (8) also stays all other proceedings in the trial court pending resolution of that appeal.

*Text of subsec. (b), as amended by Acts 2013,*
*83rd Leg., ch. 1042 (H.B. 2935), § 4*

(b) An interlocutory appeal under Subsection (a), other than an appeal under Subsection (a)(4), stays the commencement of a trial in the trial court pending resolution of the appeal. An interlocutory appeal under Subsection (a)(3), (5), (8), or (12) also stays all other proceedings in the trial court pending resolution of that appeal.

(c) A denial of a motion for summary judgment, special appearance, or plea to the jurisdiction described by Subsection (a)(5), (7), or (8) is not subject to the automatic stay under Subsection (b) unless the motion, special appearance, or plea to the jurisdiction is filed and requested for submission or hearing before the trial court not later than the later of:

(1) a date set by the trial court in a scheduling order entered under the Texas Rules of Civil Procedure; or

(2) the 180th day after the date the defendant files:

(A) the original answer;

(B) the first other responsive pleading to the plaintiff's petition; or

(C) if the plaintiff files an amended pleading that alleges a new cause of action against the defendant and the defendant is able to raise a defense to the new cause of action under Subsection (a)(5), (7), or (8), the responsive pleading that raises that defense.

(d) On a party's motion or on its own initiative, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if:

(1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and

(2) an immediate appeal from the order may materially advance the ultimate termination of the litigation.

(d–1) Subsection (d) does not apply to an action brought under the Family Code.

(e) An appeal under Subsection (d) does not stay proceedings in the trial court unless:

(1) the parties agree to a stay; or

(2) the trial or appellate court orders a stay of the proceedings pending appeal.

(f) An appellate court may accept an appeal permitted by Subsection (d) if the appealing party, not later than the 15th day after the date the trial court signs the order to be appealed, files in the court of appeals having appellate jurisdiction over the action an application for interlocutory appeal explaining why an appeal is warranted under Subsection (d). If the court of appeals accepts the appeal, the appeal is governed by the procedures in the Texas Rules of Appellate Procedure for pursuing an accelerated appeal. The date the court of appeals enters the order accepting the appeal starts the time applicable to filing the notice of appeal.

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 1987, 70th Leg., ch. 167, § 3.10, eff. Sept. 1, 1987; Acts 1989, 71st Leg., ch. 915, § 1, eff. June 14, 1989; Acts 1993, 73rd Leg., ch. 855, § 1, eff. Sept. 1, 1993; Acts 1997, 75th Leg., ch. 1296, § 1, eff. June 20, 1997; Acts 2001, 77th Leg., ch. 1389, § 1, eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 204, § 1.03, eff. Sept. 1, 2003; Acts 2005, 79th Leg., ch. 97, § 5, eff. Sept. 1, 2005; Acts 2005, 79th Leg., ch. 1051, §§ 1, 2, eff. June 18, 2005; Acts 2011, 82nd Leg., ch. 203 (H.B. 274), § 3.01, eff. Sept. 1, 2011; Acts 2013, 83rd Leg., ch. 44 (H.B. 200), § 1, eff. May 16, 2013; Acts 2013, 83rd Leg., ch. 604 (S.B. 1083), § 1, eff. Sept. 1, 2013; Acts 2013, 83rd Leg., ch. 916 (H.B. 1366), § 1, eff. Sept. 1, 2013; Acts 2013, 83rd Leg., ch. 961 (H.B. 1874), § 1, eff. Sept. 1, 2013; Acts 2013, 83rd Leg., ch. 1042 (H.B. 2935), § 4, eff. June 14, 2013.

APPENDIX TAB B:   Act of May 24, 2013, 83d Leg., R.S., H.B. 2935, § 6.

## CHAPTER 1042

### H.B. No. 2935

AN ACT

relating to a legal action involving the exercise of certain constitutional rights.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1. Section 27.004, Civil Practice and Remedies Code, is amended to read as follows:

Sec. 27.004. HEARING. *(a)* A hearing on a motion under Section 27.003 must be set not later than the *60th* [30th] day after the date of service of the motion unless the docket conditions of the court require a later hearing, *upon a showing of good cause, or by agreement of the parties, but in no event shall the hearing occur more than 90 days after service of the motion under Section 27.003, except as provided by Subsection (c).*

*(b) In the event that the court cannot hold a hearing in the time required by Subsection (a), the court may take judicial notice that the court's docket conditions required a hearing at a later date, but in no event shall the hearing occur more than 90 days after service of the motion under Section 27.003, except as provided by Subsection (c).*

*(c) If the court allows discovery under Section 27.006(b), the court may extend the hearing date to allow discovery under that subsection, but in no event shall the hearing occur more than 120 days after the service of the motion under Section 27.003.*

SECTION 2. Section 27.005, Civil Practice and Remedies Code, is amended by adding Subsection (d) to read as follows:

*(d) Notwithstanding the provisions of Subsection (c), the court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim.*

SECTION 3. Section 27.010, Civil Practice and Remedies Code, is amended by amending Subsection (b) and adding Subsection (d) to read as follows:

(b) This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, *insurance services,* or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

*(d) This chapter does not apply to a legal action brought under the Insurance Code or arising out of an insurance contract.*

SECTION 4. Sections 51.014(a) and (b), Civil Practice and Remedies Code, are amended to read as follows:

(a) A person may appeal from an interlocutory order of a district court, county court at law, or county court that:

(1) appoints a receiver or trustee;

(2) overrules a motion to vacate an order that appoints a receiver or trustee;

(3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure;

(4) grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65;

(5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state;

(6) denies a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73;

(7) grants or denies the special appearance of a defendant under Rule 120a, Texas Rules of Civil Procedure, except in a suit brought under the Family Code;

(8) grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001;

(9) denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351;

(10) grants relief sought by a motion under Section 74.351(*l* ); [or]

(11) denies a motion to dismiss filed under Section 90.007; or

*(12) denies a motion to dismiss filed under Section 27.003.*

(b) An interlocutory appeal under Subsection (a), other than an appeal under Subsection (a)(4), stays the commencement of a trial in the trial court pending resolution of the appeal. An interlocutory appeal under Subsection (a)(3), (5), [or] (8), *or (12)* also stays all other proceedings in the trial court pending resolution of that appeal.

SECTION 5.   Section 27.008(c), Civil Practice and Remedies Code, is repealed.

SECTION 6.   This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2013.

Passed by the House on May 2, 2013: Yeas 145, Nays 2, 2 present, not voting; the House concurred in Senate amendments to H.B. No. 2935 on May 24, 2013: Yeas 135, Nays 3, 2 present, not voting; passed by the Senate, with amendments, on May 22, 2013: Yeas 31, Nays 0.

Approved June 14, 2013.

Effective June 14, 2013.

---

# CHAPTER 1043

## H.B. No. 2972

### AN ACT

relating to exempting premiums for certain insurance covering stored or in-transit baled cotton from surplus lines insurance premium taxes.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1.   Section 225.004, Insurance Code, is amended by adding Subsection (g) to read as follows:

*(g) Premiums on risks or exposures under ocean marine insurance coverage of stored or in-transit baled cotton for export are not subject to the tax imposed by this chapter.*

SECTION 2.   The change in law made by this Act does not affect tax liability accruing before the effective date of this Act. That liability continues in effect as if this Act had not been enacted, and the former law is continued in effect for the collection of taxes due and for civil and criminal enforcement of the liability for those taxes.

SECTION 3.   This Act takes effect January 1, 2014.

Passed by the House on May 10, 2013: Yeas 139, Nays 0, 2 present, not voting; passed by the Senate on May 22, 2013: Yeas 30, Nays 1.

Approved June 14, 2013.

Effective January 1, 2014.

APPENDIX TAB C:   Timeline of Procedural Events

# TIMELINE OF PROCEDURAL EVENTS



**2012**

June

**6-18-12:** John Moore files its first case.

July

August

September

**10-3-12:** TCPA motion to dismiss is denied.

October

**10-22-12:** Interlocutory appeal filed.

November

**11-16-12:** Deadline to join new parties

December

**2013**

January

February

March

April

**4-26-13:** Original pleading deadline passes.

May

JM does not join new parties before the joinder deadline.

JM does not amend its petition before the original pleading deadline.



**2013**

June

6-14-13: TCPA amended to include an automatic stay during an interlocutory appeal.

July

7-16-13: The First Court of Appeals issues its opinion.

August

7-26-13: Extended pleading amendment deadline passes.

September

9-27-13: Amended petition filed.

October

November

11-1-13: The trial court grants the motion for reconsideration, strikes John Moore's amended petition, and vacates its prior orders.

December

12-19-13: John Moore files a second lawsuit.

**2014**

January

February

March

April

4-4-14: The mandate issues.

May

June

July

8-4-14: The Bureau moves for final judgment.

August

8-7-14: John Moore files motion to consolidate.

8-8-14: Final judgment in the first case

JM does not seek relief from the stay and leave to amend its pleadings before the extended pleading deadline.

JM does not move to consolidate after the stay is lifted, but waits until the day before judgment.

4938932v1